**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **WESTFIELD INSURANCE CO.,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-12-3145 |
| **SITE MAINTENANCE, INC.,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses the Motion for Summary Judgment, ECF No. 41, that Plaintiff Westfield Insurance Co. ("Westfield") filed, along with a Statement of Material Facts, ECF No. 41-1, and a Memorandum in Support, ECF No. 41-2. Plaintiff seeks summary judgment as to Defendants Site Maintenance Inc.; SMI Site Development, LLC; Site Maintenance Eastern Shore, LLC; Carmavido Land Trust, LLC; and FSA Landtrust, LLC (collectively, "Corporate Defendants); and Stephen G. Principie and Mary Louise Principie[1] (together, "Individual Defendants"). Defendants have not filed a response to Plaintiff's Motion, and the time for doing so has passed. *See* Loc. R. 105.2.a. Indeed, only the Individual Defendants have answered Plaintiff's Complaint, ECF No. 1. *See* ECF No. 33. None of the Corporate Defendants has answered or otherwise responded to Plaintiff's Complaint, ECF No. 1,

---

[1] As I noted in my September 11, 2013 Memorandum Opinion and Order, ECF No. 42, the Individual Defendants' last name appears as both "Principie" and "Principe" in the parties' filings, and I assume that the correct spelling is the one that the Individual Defendants used most frequently, "Principie." *See Westfield Ins. Co. v. Site Maintenance, Inc.*, No. PWG-12-3145, 2013 WL 5164209, at *1 n.1 (D. Md. Sept. 11, 2013).

and the Clerk of the Court has entered a default as to each Corporate Defendant.[2] ECF Nos. 26–30. A hearing on Plaintiff's Motion is not necessary. *See* Loc. R. 105.6. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED.

I. BACKGROUND

In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Because Plaintiff's Motion is unopposed, "those facts established by the motion" are "uncontroverted." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Plaintiff's Motion establishes the following undisputed facts:

---

[2] "The usual practice would be to seek default judgment," rather than summary judgment, when the defendant has not filed an answer. *D.C. Chamber of Commerce, Inc. v. Universal Bank*, No. HAR-87-3267, 1990 WL 159931, at *1 n.4 (D. Md. Oct. 17, 1990). Plaintiff previously sought default judgment as to the Corporate Defendants. ECF Nos. 21–25. I denied those motions because Plaintiff claimed that the Corporate Defendants and the Individual Defendants were jointly liable and, "'when an action is brought against several defendants, charging them with joint liability,' judgment cannot be entered against a defendant 'until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.'" *Westfield Ins. Co.*, 2013 WL 5164209, at *1 (quoting 10A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2690 (3d ed.). Instead of renewing the motions for default judgment after the matter has been adjudicated as to the Individual Defendants, as I granted Plaintiff leave to do, Plaintiff seeks summary judgment as to all Defendants. "There is substantively and procedurally little difference between summary judgment and default judgment prior to the entering of a responsive pleading by the defendant." *D.C. Chamber of Commerce*, 1990 WL 159931, at *1 n.4. Indeed, Fed. R. Civ. P. 56 does not require that the defendant have filed an answer before the plaintiff moves for summary judgment. *Id.* at *1 n.2. Therefore, I may grant summary judgment as to the Corporate Defendants as well as the Individual Defendants. *See Choice Hotels Int'l, Inc. v. Adi Sagar Motel Corp.*, No. DKC-12-1835, 2013 WL 451828, at *2 & n.3, 4 (D. Md. Feb. 5, 2013) (granting plaintiff's motion for summary judgment as to all four defendants, only two of whom had filed an answer, and denying as moot plaintiff's motion for default judgment as to the two defendants who did not file an answer or otherwise respond to plaintiff's complaint and against whom the Clerk had entered a default).

> Plaintiff Westfield is a surety corporation that issues payment and performance bonds on behalf of contractors and subcontractors for their performance of construction contracts and subcontracts. In consideration of Plaintiff Westfield agreeing to issue payment and performance bonds on behalf of Defendant Site Maintenance, Inc. ("Site Maintenance"), the Defendants entered into an Agreement of Indemnity [("Indemnity Agreement")] by which the Defendants agreed, among other terms, to indemnify Plaintiff Westfield for all losses and expenses, including attorneys' fees, as a result of issuing the bonds.
>
> In July 2009, following execution of the Agreement of Indemnity, Plaintiff Westfield issued a payment bond and performance bond on behalf of Defendant Site Maintenance for its performance of a subcontract with Cherry Hill Construction, Inc. ("Cherry Hill"), a general contractor . . . . In 2011, Cherry Hill declared Site Maintenance in breach and default of its subcontract, terminated the subcontract, and notified Westfield to complete the subcontract under the terms of the performance bond.
>
> In January 2012, Cherry Hill sued Westfield for damages in the amount of $624,214.11, plus prejudgment interest and attorneys' fees and costs, contending Westfield had breached the performance bond issued on behalf of Site Maintenance by not compensating Cherry Hill for its losses from Site Maintenance's breach and default in its performance. Westfield forwarded Cherry Hill's Complaint and the Agreement of Indemnity to the Defendant Indemnitors [i.e., all Defendants] and reminded the Indemnitors of their obligation to indemnify Westfield.
>
> . . . Cherry Hill and Westfield settled the lawsuit with Westfield tendering a settlement payment of $375,000 to Cherry Hill which, in turn, released Westfield from further liability under the performance bond and dismissed the lawsuit against Westfield. Thereafter, in August 2012, Westfield demanded indemnification from the Defendants, but Defendants did not respond. Unbeknownst to Plaintiff Westfield, Defendant Stephen G. Principe had filed Articles of Cancellation for two of the Defendant Indemnitors, SMI Site Development, LLC and SMI Maintenance Eastern Shore, LLC, with the Maryland Department of Assessments and Taxation.
>
> In October 2012, Plaintiff Westfield initiated this captioned lawsuit against Defendants for indemnification pursuant to the Agreement of Indemnity. Orders of Default have been entered against all Defendants, except Stephen G. Principe and Mary Louise Principe. As of July 29, 2013, Westfield has paid $792,038.30 in fees and expenses (including the $375,000 settlement sum) as a result of issuing the bonds on behalf of Site Maintenance. Defendants have refused or otherwise failed to respond to Plaintiff Westfield's demands for indemnification.

Pl.'s Mem. 1–3 (citations omitted).

Plaintiff pleads contractual indemnification based on the Indemnity Agreement and, in the alternative, common law indemnification. Compl. 5–6. Plaintiff seeks judgment in its favor "and against Defendants, jointly and severally, in the amount of $757,852.10, plus any additional losses, costs, expenses, and attorneys' fees incurred by Plaintiff Westfield after September 15, 2012," as well as interest. *Id.* at 6. Plaintiff attached to its Complaint the Indemnity Agreement, which is signed by all Defendants and notarized; the Subcontractor's Labor and Material Payment Bond and the Subcontractor's Performance Bond (together, "Bonds"), both between Site Maintenance as subcontractor and Westfield as surety, and Cherry Hill as general contractor; and proof of Westfield's payments related to the Bonds. Compl. Exs. A–C, ECF Nos. 1-2 – 1-4. The Court adopts the descriptions of the Indemnity Agreement and the Bonds in Plaintiff's Statement of Material Facts and Memorandum because they accurately relate the terms of the Indemnity Agreement and the Bonds, copies of which were attached to the filings. *See* Pl.'s Stmt. ¶¶ 15–17; Pl.'s Mem. 5–6, 7–10; Indemnity Agr. 1, 2, 4; Performance Bond 1–2.

In its summary judgment motion, Plaintiff contends that "[t]he parties' Agreement of Indemnity unambiguously calls for the Defendant Indemnitors to indemnify Westfield for its costs incurred due to issuing the performance bond on behalf of Site Maintenance, Inc.," Pl.'s Mem. 5, but when "Westfield demanded indemnification from the Defendants, . . . Defendants did not respond," *id.* at 2. Plaintiff argues that the Indemnity Agreement's provisions "encompass the losses and expenses, including court costs and counsel fees, Westlaw incurred defending the lawsuit cherry Hill brought against Westfield on the performance bond issued for Site Maintenance," and also encompass "the losses and expenses, including court costs and counsel fees, Westfield has incurred and continues to incur in this captioned action to enforce the terms of the Agreement of Indemnity," *id.* at 9. As of July 31, 2013, the amount due to

Westfield under the Indemnity Agreement totaled $792,038.30. *Id.* at 12. Along with its Motion, Plaintiff submitted the Declaration of David A. Kotnik, Westfield's Senior Surety Claim Counsel, affirming the facts set forth in Plaintiff's Complaint. Pl.'s Mem. Ex. 1, ECF No. 41-3. Mr. Kotnik attached to his Declaration the Indemnity Agreement; the Bonds; an April 5, 2012 letter from Westfield to Defendants, in which Westfield provided Defendants with the complaint that Cherry Hill filed; the Settlement Agreement between Westfield and Cherry Hill; a copy of the check Westfield provided to Cherry Hill to settle the matter; the August 7, 2012 letter from Westfield to all Defendants but Site Maintenance, demanding indemnification; and a "listing of the payments made by Westfield for fees, costs and expenses attributable to the bonds Westfield issued on behalf of Site Maintenance, Inc." *Id.* Mr. Kotnik's Declaration states that Plaintiff incurred costs of $792,038.30 as of July 29, 2013. Kotnik Decl. ¶ 25; *see* Kotnik Decl. Exs. D (check to Cherry Hill) & F (list of expenses). Plaintiff also attached the Declaration of Robert K. Cox, Plaintiff's Counsel, which included as Exhibit A the August 8, 2012 demand letter from Westfield to Site Maintenance. Pl.'s Mem. Ex. 2, ECF No. 41-4.

## II. STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute

exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). When the nonmoving party does not oppose a summary judgment motion, "those facts established by the motion" are "uncontroverted." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Nonetheless, the moving party still must demonstrate that, based on those facts, that party is entitled to judgment as a matter of law, because "[t]he failure to respond to the motion does not automatically accomplish this." *Id.*

## III. DISCUSSION

Under Maryland law,[3] "the fundamental principles governing surety bond and indemnification relationships" are as follows:

> A surety bond is a three-party agreement between a principal obligor, an obligee, and a surety. In a performance bond context, the surety assures the obligee that if the principal fails to perform its contractual duties, the surety will discharge the duties itself, either by performing them or paying the obligee the excess costs of performance. In a payment bond, the surety guarantees the principal's duty to the obligee to pay its (the principal's) laborers, subcontractors, and suppliers.
>
> . . . The surety is primarily or jointly liable with the principal and, therefore, is immediately responsible if the principal fails to perform. Ultimate liability, however, is with the principal, not the surety. Upon default of the principal, the surety may pay the money and proceed against the principal for indemnity. The bond is the measure of the surety's obligation. In the construction industry, it is standard practice for surety companies to require contractors for whom they write bonds to execute indemnity agreements by which principals and their individual backers agree to indemnify sureties against any loss they may incur as a result of writing bonds on behalf of principals.

*Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 468 (Md. 2004) (internal citations omitted).

---

[3] "In an action based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 U.S. 358, 361 (4th Cir. 2005) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Plaintiff asserts, and Defendants do not contest, that "Maryland is the jurisdiction where the Agreement of Indemnity contract was made, and Maryland law controls the substantive legal issues." Pl.'s Mem. 4. Accordingly, I will apply Maryland law.

Indemnification agreements and surety bonds are contracts. *Id.* Thus, a principal is liable to a surety under an indemnification agreement if the principal breached the indemnification agreement by failing to indemnify the surety after the surety incurred a loss on a bond. *See* Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 966 (MSBA 5th ed. 2013); *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (stating that a breach of contract under Maryland law is "a failure without legal excuse to perform any promise which forms the whole or part of a contract") (citations and quotation marks omitted); *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955). These agreements "must be construed in accordance with . . . traditional rules of objective contract interpretation." *Atl. Contracting*, 844 A.2d at 468–69.

> In determining the meaning of contractual language, Maryland courts apply the principle of the objective interpretation of contracts. Applying objective interpretation principles, the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean. [The] primary consideration, when interpreting a contract's terms, is the "customary, ordinary, and accepted meaning" of the language used.

*Id.* at 469 (internal citations omitted).

The undisputed facts show that Plaintiff, as surety, entered into the Indemnity Agreement with Defendants, as principal. Pl.'s Mem. 1–3. Plaintiff agreed to issue, and did issue, Payment and Performance Bonds on behalf of Defendant Site Maintenance with regard to Site Maintenance's subcontract with a third party. *Id.* The Indemnity Agreement, in unambiguous terms, provided that Defendants would indemnify Plaintiff for any losses Plaintiff incurred under the Bonds. *Id.* Site Maintenance breached the subcontract, and as a result, Plaintiff incurred losses under the Bonds. *Id.* Defendants failed to indemnify Plaintiff. *Id.* Plaintiff's losses, which include a settlement payment of $375,000 to the third party, costs, attorney's fees, and expenses, totaled $792,038.30 as of July 29, 2013. *Id.* Thus, Defendants breached the Indemnity

Agreement and are jointly and severally liable to Plaintiff for $792,038.30, as well as costs permitted by 28 U.S.C. § 1920, *see* Loc. R. 109, and post-judgment interest pursuant to 28 U.S.C. § 1961. Plaintiff's Motion for Summary Judgment is GRANTED.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Dated: <u>November 6, 2013</u>　　　　　　　　　　　　<u>　　　　/S/　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

lyb